UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL JORGENSEN,         )<br>                                                    )<br>            Plaintiff,                 )<br>                                                    )<br>      v.                                          )     No. 2:20-cv-00643-JPH-MKK<br>                                                    )<br>WEXFORD OF INDIANA, et al.,  )<br>                                                    )<br>            Defendants.            ) | |

**ORDER GRANTING IN PART, DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Michael Jorgensen alleges that Dr. Miguel Franco, a dentist who at all times relevant to this lawsuit was employed by Wexford of Indiana at the Putnamville Correctional Facility, refused to treat his tooth pain and that Wexford maintained an unconstitutional policy of not providing proper treatment to inmates scheduled for release in the near future. Defendants have moved for summary judgment. For the reasons that follow, that motion is **GRANTED** with respect to the *Monell* claim against Wexford and the retaliation claim against Dr. Franco; and **DENIED** with respect to the deliberate indifference claim against Dr. Franco.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to the non-moving

1

party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 572–73 (7th Cir. 2017).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A.  Mr. Jorgensen's dental history and Dr. Franco's initial examination

Mr. Jorgensen received an intake dental examination from a non-defendant dentist while in prison in May 2018. Dkt. 69-2 at 6–7 (Jorgensen prison dental history). This dentist noted decay or some other deficiency in sixteen of his teeth. *Id.* He also identified at least three teeth—numbers 2, 10, and 15—that were decayed to the point of being "non-restorable." *Id.* Tooth 2 was extracted in June 2018. *Id.* at 7.

Mr. Jorgensen received another intake examination from another non-defendant dentist in March 2020. *Id.* at 7–8. This dentist identified decay in a handful of teeth. *Id.* He also identified Tooth 3 as "non-restorable." *Id.* at 7.

Dr. Franco examined Mr. Jorgensen on July 23, 2020, in response to Mr. Jorgensen's report of tooth pain a few days prior. *Id.* at 8; *id.* at 16 (healthcare request form). Dr. Franco performed a limited examination to identify the source of the pain. Dkt. 69-1, ¶ 7 (Franco 7/25/22 declaration); dkt. 77-1, ¶¶ 4–5 (Franco 8/31/22 declaration). Following the examination, Dr. Franco recommended extraction of Tooth 3, which had decay and "loss of complete bone support," and possibly Tooth 32, which was a partially missing tooth with a

3

retained root. Dkt. 69-2 at 8. An extraction of Tooth 3 was scheduled for August 18, 2020. *Id.*; dkt. 69-1, ¶ 8.

### B. Delays and Mr. Jorgensen's medical requests

On August 10, 2020, an unidentified medical staff member responded to Mr. Jorgensen's healthcare request form with the following information:

> The Facility is [on] lockdown due to the Corona Virus Prevention Plan, and routine dental care is postponed until it is safe to treat you. Therefore, we are asking you to:
>
> 1. Submit a new Health Care Request in the near future when we are back to normal, OR if you have swelling of the face, fever and/or signs of acute infection
>
> 2. Do your part, will save the date of this request and any charges paid on your [follow-up] request
>
> 3. Purchase Tylenol and Ibuprofen (or Naproxen) from commissary for pain

Dkt. 69-2 at 16.

From September 9 through October 12, 2020, Mr. Jorgensen submitted at least seven healthcare request forms complaining of tooth pain and seeking treatment. *Id.* at 17−23. The healthcare requests indicate that Mr. Jorgensen was in significant pain:

- "I am in and have been in constant pain. My gums bleed daily, bad!"

- "Every day I'm in pain and bleeding. I can barely eat."

- "I'm in pain every day cause of my teeth. . . . This is inhumane I can barely eat."

- "I can barely eat the food I'm given cause my teeth hurt so bad. The pain meds on commissary do not help."

- "I am in constant pain. I can barely chew on anything and my gums are always bleeding."

4

- "My teeth hurt so bad I cannot eat or sleep."
- "My teeth are infected I need help."

*Id.*

Dr. Franco responded to these requests, each time explaining that routine dental care had been postponed while Mr. Jorgensen was quarantined. *Id.* In response to the first several requests, Dr. Franco instructed Mr. Jorgensen to purchase pain medication from commissary. *Id.* at 18–19. On October 6, 2020, Dr. Franco issued a prescription for 600-mg ibuprofen—a higher dose than was available from the commissary. *Id.* at 22. Mr. Jorgensen reports that the higher dosage of ibuprofen "helped a little bit" with the pain. Dkt. 69-3 at 5, Jorgensen Dep. 15:25–16:11.

    **C.**    **October 26, 2020 scheduled extraction**

On October 12, 2020, Mr. Jorgensen submitted a healthcare request form stating, "I'm off quarantine and still can't eat." Dkt. 69-2 at 25. Mr. Jorgensen was scheduled for an extraction two weeks later, on October 26. *Id.* at 10.

At the October 26 appointment, Mr. Jorgensen reported that all his teeth hurt and that he wanted them all extracted. *Id.* Dr. Franco explained that most of Mr. Jorgensen's teeth were in acceptable condition, but he was suffering from gingivitis (gum inflammation) that might be causing additional pain. *Id.* Dr. Franco advised Mr. Jorgensen to brush more frequently and more slowly to ease the gum inflammation. *Id.*

5

According to Mr. Jorgensen,[1] Dr. Franco was "confrontational" and had "quite a bit of negative attitude" at the appointment. Dkt. 69-3 at 7, Jorgensen Dep. 24:3−8. During preliminary discussions, Mr. Jorgensen stated that he had taken ibuprofen and Tylenol the night before. *Id.* at 4, Jorgensen Dep. 10:14−21. Dr. Franco then "started scolding" and "patronizing" Mr. Jorgensen about combining the two medications. *Id.*, Jorgensen Dep. 10:21−22. Mr. Jorgensen asked Dr. Franco to stop and repeatedly told him to "just pull the tooth." *Id.*, Jorgensen Dep. 10:23−11:1. Mr. Jorgensen then sat down in the operating chair, and Dr. Franco stated, "I don't think it's a good idea to piss off the dentist about to work on you." *Id.*, Jorgensen Dep. 11:1−4. Mr. Jorgensen believed this was a threat, so he walked out of the visit. *Id.*, Jorgensen Dep. 11:5−8; *id.* at 6, Jorgensen Dep. 18:22.

### D. Further healthcare requests and January 20, 2021 extractions

On December 2, 2020, Mr. Jorgensen submitted a healthcare request form accusing Dr. Franco of being unprofessional and requesting to be seen by a different dentist. Dkt. 69-2 at 15. Dr. Franco responded, "I'm sorry you feel that way. I'm the only dentist here that pulls teeth, and also, per policy, offenders don't get to pick doctors. I understand how you feel, but we can try again. I'll be happy to pull your teeth without pain. If they really bother you, I will pull them for you." *Id.*

---

[1] Although Dr. Franco's appointment notes provide a different account of what transpired at the October 26 appointment, dkt. 69-2 at 10, for summary judgment purposes, the Court treats the account Mr. Jorgensen provided in his deposition testimony as true.

On January 1, 2021, Mr. Jorgensen submitted a healthcare request form requesting an extraction, despite continued hesitations about Dr. Franco. *Id.* at 13. On January 20, 2021, a social worker at the prison referred Mr. Jorgensen to dental for tooth pain. *Id.*

Mr. Jorgensen was scheduled for an appointment with Dr. Franco on January 20, 2021. At this visit, Dr. Franco extracted three teeth. *Id.* at 14. The extractions were uneventful. *See* dkt. 69-3 at 6, Jorgensen Dep. 21:8−10 ("He was a little — he was a little rough, but there was no pain, no — no added pain, you know."); dkt. 69-2 at 12 ("Uneventful appointment, patient appreciative."). This appointment successfully alleviated Mr. Jorgensen's mouth pain. Dkt. 69-3 at 6, Jorgensen Dep. 21:11−15.

### III.
### Discussion

#### A. Dr. Franco — Eighth Amendment

##### 1. Applicable law

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious

7

medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Deliberate indifference is more than negligence or even objective recklessness. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). To survive summary judgment on a claim of deliberate indifference, a plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). "[A] jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

8

### 2.   Analysis

Dr. Franco does not dispute that Mr. Jorgensen's tooth pain was a serious medical condition. Dkt. 77 at 2, ¶ 3. Instead, he argues that he is entitled to summary judgment on Mr. Jorgenson's deliberate indifference claim because the designated evidence shows that he provided timely and adequate care, in light of Covid-related restrictions on "routine" dental care. *See* Dkt. 68 at 11; dkt. 77 at 3. Mr. Jorgensen responds that his dental needs were urgent, not routine, and that Dr. Franco ignored his pain and threatened him instead of providing adequate care. *See* dkt. 75 at 6–10.

Viewing the designated evidence in the light most favorable to Mr. Jorgensen, a reasonable jury could find that Dr. Franco was deliberately indifferent to Mr. Jorgensen's serious medical needs.

Dr. Franco argues that he could not have treated Mr. Jorgensen because "the facility was on lockdown in accordance with the Coronavirus Prevention Plan." Dkt. 68 at 3. But he points to no evidence regarding the details of the lockdown, including under what circumstances, if any, that he was allowed to provide dental care to inmates. He contends that he was prevented from providing "routine" dental care. *Id.* at 11. But the designated evidence does not establish that Dr. Franco was precluded by any order or policy of Putnamville or Wexford from seeing patients with urgent or emergent dental needs. And a reasonable jury could find that Mr. Jorgensen's needs were urgent or emergent, given his repeated complaints of significant pain. *See, e.g.*, dkt. 69-2 at 16 (July 21, 2020: "I need some teeth extracted. I'm in a lot of pain and am having a hard

9

time eating."); *id* at 17 (September 11, 2020: "I am in and have been in constant pain.").

"Medical doctors [. . .] may be found deliberately indifferent if they discount, without investigating, a prisoner's symptoms of a serious medical need." *Bentz v. Ghosh*, 718 Fed. App'x 413, 417 (7th Cir. 2017) (reversing grant of summary judgment where jury could find that doctor failed to ensure prompt treatment of dental pain). Here, Dr. Franco did not examine Mr. Jorgensen between July 30 and October 26, 2020, and a reasonable jury could find that he therefore could not determine whether Mr. Jorgensen's condition was routine or urgent.

Also, setting aside whether a Covid lockdown prevented Dr. Franco from extracting Mr. Jorgensen's teeth, a reasonable jury could find that he was deliberately indifferent for failing to prescribe more effective pain medication before October 6, 2020. Dkt. 75 at 4-5, ¶¶ 16, 19; *see* dkt. 69-2 at 20 (September 28, 2020: "The pain meds on commissary do not help.").

Finally, a reasonable jury could find that Dr. Franco told Mr. Jorgensen at the October 26 appointment, "I don't think it's a good idea to piss off the dentist about to work on you." Dkt. 69-3 at 4, Jorgensen Dep. 11:1-4. The jury could also find that, in making this statement, Dr. Franco threatened to harm him instead of providing constitutionally adequate dental care.

Accordingly, Dr. Franco is not entitled to summary judgment on Mr. Jorgensen's Eighth Amendment claim against him.

### B. Dr. Franco — First Amendment Retaliation

#### 1. Applicable law

To prevail on a First Amendment retaliation claim, Mr. Jorgensen must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in [Dr. Franco's] decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (cleaned up); *see also Mays v. Springborn,* 719 F.3d 631, 635 (7th Cir. 2013).

#### 2. Analysis

Mr. Jorgensen alleges that Dr. Franco's statement during the October 26 scheduled extraction—"I don't think it's a good idea to piss of the dentist about to work on you"—was retaliation for Mr. Jorgensen filing grievances. *See* dkt. 1 at 3. Dr. Franco does not dispute that Mr. Jorgensen engaged in activity protected by the First Amendment by filing one or more grievances.[2] Dkt. 68 (summary judgment brief assuming that the first element is met); *see Watkins v. Kasper,* 599 F.3d 791, 798 (7th Cir. 2010) ("A prisoner has a First Amendment right to make grievances about conditions of confinement."). Instead, he argues

---

[2] Mr. Jorgensen does not designate evidence showing that he filed a grievance. Instead, for the first time in his surreply, he asserts that the defendants improperly failed to produce the grievances as part of their initial disclosures. Dkt. 79 at 2. Regardless, the Court will not grant summary judgment on a basis not raised by Dr. Franco—at least not without first giving Mr. Jorgensen notice and an opportunity to respond. *See* Fed. R. Civ. P. 56(f)(2) ("After giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party . . . .").

11

that his statement was not a constitutional deprivation and that it was not made in retaliation for First Amendment activity. Dkt. 68 at 12-14. In his response, Mr. Jorgensen reiterates that the statement was a threat and that Dr. Franco's motive was retaliatory.

A reasonable jury could find that Dr. Franco's statement, made in the context of an imminent tooth extraction, was a sufficient deprivation to deter First Amendment activity. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) (official's statement that plaintiff's "life [. . .] would go better if he stopped complaining" could be perceived as a threat sufficient to deter First Amendment conduct). However, Mr. Jorgensen has not pointed to evidence from which a jury could conclude that Dr. Franco was motivated by retaliation based on First Amendment activity.

Indeed, Mr. Jorgensen's own deposition testimony indicates that the inappropriate statement Dr. Franco allegedly made was motivated by general annoyance or dislike toward prisoners, not any First Amendment activity. *See* dkt. 69-3 at 7, Jorgensen Dep. 24:5-17 ("[H]e gave me quite a bit of negative attitude from the time that I walked in the door, like he didn't want to be there, didn't want to be dealing with it . . . . I felt like he was treating me like a piece of garbage because of the place I was in. . . . I'm just a worthless inmate to him."). The only basis Mr. Jorgensen provides for retaliatory animus is the timing of events, and suspicious timing alone is rarely enough to show retaliation. *Manuel v. Nalley*, 966 F.3d 678, 681 (7th Cir. 2020) ("Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just

12

that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." (cleaned up)).

Because no reasonable jury could find from the designated evidence that Dr. Franco's alleged statement at the October 26, 2020 appointment was motivated by retaliation based on Mr. Jorgensen's protected First Amendment activity, Dr. Franco is entitled to summary judgment on this claim.

### C. Wexford — Eighth Amendment

#### 1. Applicable law

Because Wexford acted under color of state law by contracting to perform a government function—providing healthcare services to inmates—it is treated as a government entity for purposes of 42 U.S.C. § 1983 claims. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019). Therefore, a claim against Wexford must be based on a policy, practice, or custom that caused a constitutional violation. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). To prevail on such a claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

A plaintiff may establish the first element in three ways. First, the plaintiff may show that the alleged unconstitutional conduct implements or executes an official policy adopted by the corporation's officers. *Thomas v. Martija*, 991 F.3d

763, 773 (7th Cir. 2021) (citing *Monell,* 436 U.S. at 690). Second, the plaintiff may show that the unconstitutional action was done pursuant to a widespread custom, even one that is not formally codified. *Id.* Third, the plaintiff may prove that an actor with final policymaking authority within the entity adopted the relevant policy or custom. *Id.*

To prove Wexford was deliberately indifferent, Mr. Jorgensen must show that Wexford consciously disregarded the likelihood of a constitutional violation. *Dean,* 18 F.4th at 235. Unless the unconstitutional results of Wexford's actions were "patently obvious," Mr. Jorgensen "must prove a prior pattern of similar constitutional violations resulting from the policy." *Id.* at 236.

### 2. Analysis

Mr. Jorgensen contends that Wexford maintains a widespread practice of not providing dentures to inmates who are scheduled for release in the near future. Dkt. 75 at 6, ¶¶ 23-24 (declaration in opposition to motion for summary judgment). But to survive summary judgment on such a claim, he must point to evidence of a widespread pattern of related violations. *Dean,* 18 F.4th at 236 (pattern of violations required to put municipality on notice of unconstitutional consequences of its practice or policy and that the practice or policy is the moving force behind the injury). Here, Mr. Jorgensen points only to the inclusion of his scheduled release date on some of the responses to his healthcare requests. *Id.*; *see* dkt. 69-2 at 16, 18-19, 22-25. This is not sufficient evidence for a reasonable jury to find the widespread practice that Mr. Jorgensen alleges. No reasonable

jury could find from the designated evidence that Mr. Jorgensen has made the required showing under *Monell*.

Mr. Jorgensen also contends that Wexford should be held responsible for the decisions of unidentified employees who delayed his tooth extraction based on Covid-19 response measures. Dkt. 75 at 6, ¶ 22; *id.* at 17 (brief in response to motion for summary judgment). But the actions of one or more Wexford employees, without more, does not give rise to corporate liability under § 1983. *Walker*, 940 F.3d at 966.

Accordingly, Wexford is entitled to summary judgment.

## IV.
## Conclusion

Defendants' motion for summary judgment, dkt. [67], is **GRANTED in part and DENIED in part**. The motion is **GRANTED with respect** to the claims against Wexford and the First Amendment retaliation claim against Dr. Franco. The motion is **DENIED with respect** to the Eighth Amendment claim against Dr. Franco. No partial final judgment shall enter at this time.

The **clerk is directed** to terminate Wexford of Indiana as a Defendant on the docket.

Mr. Jorgensen's Eighth Amendment deliberate indifference claim against Dr. Franco will be resolved via settlement or trial.

**SO ORDERED.**

Date: 3/22/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

15

Distribution:

All ECF-registered counsel of record via email

MICHAEL JORGENSEN
978796
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135